Waite v Tom (2025 NY Slip Op 50133(U))

[*1]

Waite v Tom

2025 NY Slip Op 50133(U)

Decided on February 6, 2025

Supreme Court, Bronx County

Capella, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 6, 2025
Supreme Court, Bronx County

Janet Waite, as Administratrix of the Goods, Chattel and Credits which were of CLARENCE WAITE, deceased and JANET WAITE, Individually, Plaintiffs,

against
Michael Tom, M.D., Sal Tallercio, M.D., ENT & ALLERGY ASSOCIATES, LLP, Melin Tan-Geller, M.D., and Barbara Griffith, M.D., Defendant.

Index No. 24796/18

Plaintiffs' Attorney
Sharon Elmaleh, Esq.
Rosenberg, Minc, Falkoff & Wolff, LLP
122 East 42 Street
New York, New York 10168
(212)697-9280
Dr. Tallercio's Attorney
Ronnie M. Grill, Esq.
Kaufman, Borgeest & Ryan, LLP
1205 Franklin Avenue, 2nd Floor
Garden City, New York 11530
(516)248-6000

Joseph E. Capella, J.

The following papers numbered 1 to 3 read on this motion.
PAPERS NUMBERED
NOTICE OF MOTION AND AFFIRMATION AND EXHIBITS 1
ANSWERING AFFIRMATION AND EXHIBITS 2
REPLY AFFIRMATION AND EXHIBITS 3
UPON THE FOREGOING CITED PAPERS, THE DECISION/ORDER IN THIS MOTION IS AS FOLLOWS:
Motion by defendant, Sal Tallercio, M.D., for summary judgment (CPLR 3212) and dismissal of plaintiffs' amended complaint, which includes medical malpractice, lack of informed consent and wrongful death, and essentially alleges that defendants were negligent in failing to timely diagnose laryngeal cancer thereby allowing the cancer to metastasize and cause death, is granted in part. It should be noted that decedent had only one visit with Dr. Tallercio on July 28, 2015, and this was at the facility of co-defendant, ENT & Allergy Associates, LLP. As the movant, Dr. Tallercio has the initial prima facie burden of showing of an entitlement to summary judgment as a matter of law by tendering sufficient evidence to eliminate any material issues of fact. (Alvarez v Prospect, 68 NY2d 320 [1986].) If he does, then the burden shifts to plaintiffs to produce evidentiary proof in admissible form sufficient to create issues of fact to warrant a trial, (Alvarez, 68 NY2d 320), and denial of summary judgment.
Dr. Tallercio notes that since his only date of treatment was July 28, 2015, plaintiffs had to commence this action within two years and six months of this date, in other words on/before January 27, 2018, for statute of limitation purposes. (CPLR § 214-a.) Therefore, Dr. Tallercio argues that this action should be dismissed as time-bared because plaintiffs commenced this action on April 25, 2018, approximately three months after the statute of limitations had expired. In opposition, plaintiffs argue that CPLR § 214-a was amended in 2018 to provide a "discovery rule" for cases involving failure to diagnose cancer. Before the amendment, CPLR § 214-a provided that an action for medical, dental or podiatric malpractice must be commenced within two years and six months of the act, omission or failure complained of. With the 2018 discovery rule amendment, CPLR § 214-a now provided that an action for medical, dental or podiatric malpractice must be commenced within two years and six months of the accrual of any such action. The accrual of an action occurs . . . when one knows or reasonably should have known of the alleged negligent failure to diagnose a malignant tumor or cancer, whether by act or omission and knows or reasonably should have known that such negligent act or omission has caused the injury. Essentially, the amendment, which is known as Lavern's Law, provided that actions based on an alleged failure to diagnose cancer may be commenced within two years and six months from when the person knows or reasonably should have known of such alleged negligent act/omission. According to Dr. Tallercio, however, the amendment only took effect on January 31, 2018, and this action commenced on April 25, 2018, and as such plaintiffs are not entitled to utilize Lavern's Law.
Despite the amendment's effective date of January 31, 2018, Dr. Tallercio does concede that the Legislature provided a "retroactive rule" in which the amendment would apply to acts, omissions or failures occurring within two years and six months prior (emphasis added) to the amendment's effective date of January 31, 2018 (L 2018, ch 1, § 6). In other words, causes of action accruing (emphasis added) on or after July 31, 2015. However, as the instant action accrued on July 28, 2015, the aforementioned retroactive rule does not apply. On the other hand, in creating Lavern's Law the Legislature further provided a "revival rule" that allowed for the revival of failure to diagnose cancer actions that became time-barred (emphasis added) within 10 months prior to the amendment's effective date, but only to the extent that the action was commenced within six months of the effective date (L 2018, ch 1, § 4). In other words, a cause of action based on a failure to diagnose cancer that became time-barred between March 31, 2017, and January 31, 2018, may be revived if it is commenced no later than July 31, 2018. As the [*2]instant action became time-barred on January 28, 2018, and commenced on April 25, 2018, these dates falls within aforementioned revival rule; therefore, Lavern's Law does apply, and this action is timely.
In addition to arguing the statute of limitations, Dr. Tallercio seeks dismissal of plaintiffs' lack of informed consent claim on the premise that a failure to diagnose cannot be the basis for said claim. (Janeczko v Russell, 46 AD3d 324 [1st Dept 2007].) In Janeczko, the First Department made it clear that a failure to diagnose cannot be the basis of a cause of action for lack of informed consent unless it is associated with a diagnostic procedure that involves invasion or destruction of the integrity of the body, which did not occur here. As for the request to dismiss plaintiffs' claims for medical malpractice, Dr. Tallercio provides an expert affirmation by Dr. Setzen, who is board certified in otolaryngology-head and neck surgery. According to Dr. Setzen, the reason Dr. Tallercio only saw decedent once (i.e., July 28, 2015) was for a second opinion at the request of co-defendant, Dr. Michael Tom, regarding decedent's chronic hoarseness. Decedent had seen Dr. Tom on numerous earlier occasions, and it was Dr. Tom's impression that decedent had dysphonia, chronic laryngitis and chronic maxillary sinusitis. Upon presentation to Dr. Tallercio, decedent's sole complaint was continued hoarseness for approximately 15 months and a breathy, strained voice. According to Dr. Setzen, Dr. Tallercio performed a thorough and appropriate physical exam, which included an examination of decedent's ears, nose, mouth, throat and neck. There were no palpable masses and no abnormal findings.
Dr. Setzen also reviewed the video stroboscopy performed by Dr. Tallercio and opines that there were no masses, lesions, tumors or any other signs on the study consistent with a laryngeal or cricoid cancer. He opines that no further imaging, including a CT scan or MRI, or a biopsy, was indicated as of July 28, 2015, as there were no findings on physical examination or video stroboscopy suggestive of cancer such as a mass or vocal cord paralysis. It is Dr. Setzen's opinion that all care and treatment provided by Dr. Tallercio conformed with the accepted standard of care and treatment. Lastly, as to plaintiffs' wrongful death claim, Dr. Tallercio correctly notes that said claim cannot be maintained in the absence of a viable underlying claim for medical malpractice. (Waters v Mt Sinai, 38 AD3d 257 [1st Dept 2007].) Based on the aforementioned, the Court is satisfied that Dr. Tallercio has met his burden for summary judgment, (Zuckerman v City of NY, 49 NY2d 557 [1980]; Kaffka v NY Hospital, 228 AD2d 332 [1st Dept 1996]), which now shifts to plaintiffs to demonstrate that issues of fact exist to warrant a trial.
It should be noted that plaintiffs' opposition papers do not address lack of informed consent; therefore, said claim is dismissed accordingly. As for the medical malpractice claim, plaintiffs must come forward with a qualified expert(s) who can, inter alia, opine to a reasonable degree of medical certainty that Dr. Tallercio departed from the standard of care, (Canter v Mulnick, 93 AD2d 751 [1st Dept 1983]), and (emphasis added) that such departure was a proximate cause of decedent's death. (Mortensen v Memorial, 105 AD2d 151 [1st Dept 1984].) Plaintiffs' expert(s) must address the specific assertions made by Dr. Setzen, (Lowe v Japal, 170 AD3d 701 [2d Dept 2018]), and set forth a specific departure(s) that proximately caused injury and/or death. (Amsler v Verrilli, 119 AD2d 786 [2d Dept 1986].) Included in plaintiffs' opposition papers is an expert affirmation by Dr. Mark A. Singer, who is board certified in [*3]otolaryngology, and he notes that although Dr. Tallercio testified that he did not have any conversations with Dr. Tom prior to his July 28 exam of decedent, he did have Dr. Tom's notes available for him to review. According to Dr. Singer, a practicing ENT physician like Dr. Tallercio should be charged with awareness of the hallmark signs/symptoms of larygeal cancer. 
It is Dr. Singer's opinion that Dr. Tallercio's failure to have considered laryngeal cancer as part of his differential diagnosis was a deviation from the standard of care. He states that had Dr. Tallercio reviewed Dr. Tom's prior notes, he would have understood that Dr. Tom had not done any imaging of decedent's throat and had therefore not ruled out a subglottic mass as the cause of the hoarsness, which by July 2015 had persisted for eleven months. He opines that Dr. Tallercio had an independent duty to rule out the most serious cause(s) of decedent's condition, or at the very least confer with Dr. Tom and suggest that the latter do so prior to any further therapies or interventions being suggested. In response to Dr. Setzen's reference to muscle tension dysphonia (MTD), Dr. Singer notes that this is a diagnosis of exclusion and requires a full history, examination and exclusion of other causes. And in order to properly conclude that decedent suffered MTD, Dr. Tallercio would have to rule out other potential causes of the glottic insufficiency, which he did not. Dr. Singer opines that Dr. Tallercio's observation of bowing of the left vocal cord should have served as a red flag, as asymmetry in medicine is worrisome. Lastly, Dr. Singer opines that an earlier diagnosis would have decreased the risk of metastasis and ultimate mortality.
Viewing the evidence in a light most favorable to plaintiffs, (O'Sullivan v Presbyterian, 217 AD2d 98 [1st Dept 1995]), the Court is satisfied that sufficient issues of fact exist to warrant a trial on plaintiffs' medical malpractice claim. And as there is no dispute that plaintiffs' wrongful death claim is predicated on the aforementioned medical malpractice claim, this cause of action also survives. (Waters, 38 AD3d 257.) Therefore, based on the aforementioned, Dr. Tallercio's motion for summary judgment is granted only to the extent of dismissing plaintiffs' cause of action for lack of informed consent. Plaintiffs are directed to serve a copy of this decision with notice of entry upon all sides within 20 days of receipt of copy of same. This constitutes the decision and order of this court.
Dated 2/6/25
Joseph E. Capella, J.S.C.